DEAKE *v.* UNITED STATES EXPRESS CO.

1. EVIDENCE—CARRIERS—FREIGHT—NEGLIGENCE.

Upon the issue whether the inherent vice or nature of a calf was the cause of its breaking the crate and escaping while in transit, testimony was material and competent tending to show his gentleness of disposition, and that such an animal did not usually become vicious until it was older.

2. SAME—NEGLIGENCE.

Where the testimony showed that the crate in which a calf was shipped was apparently strong, that the animal had been carried without accident from Ypsilanti to Detroit, where it became excited and vicious, and in turning around broke the crate, which was too large, and escaped, that defendant had carried other calves in similar crates for plaintiff, defendant was entitled to the direction of a verdict, as the evidence did not show negligence in accepting the animal in an insufficient crate, or negligence in failing to tie the calf to the crate.

Error to Washtenaw; Kinne, J. Submitted April 8, 1912. (Docket No. 69.) Decided November 8, 1912.

Case in justice's court by Clayton E. Deake and another against the United States Express Company for the loss of a bull calf in transit. The cause was appealed to the

circuit court. Judgment for plaintiffs.   Defendant brings error.   Reversed, and new trial denied.

*E. B. Norris*, for appellant.

*J. F. Lawrence*, for appellees.

KUHN, J.   This action was brought to recover the value of a bull calf shipped by plaintiffs from Ypsilanti for delivery to one Gardner at Barryton, Mich.   It was agreed that the calf was of the value of $80, and freight was paid on that valuation.   The calf escaped at the city of Detroit on the evening of the 9th day of March, 1911, and was not delivered to Gardner nor returned to the plaintiffs. The calf was delivered to the defendant in a crate constructed by plaintiffs, at which time they received a receipt for the calf, and signed a live stock contract, section 6 of which contains the following:

"The shipper hereby agrees that the responsibility of the express company shall be that of a forwarder only, and not that of a common carrier, and that the express company shall not be liable for the conduct or acts of the animals to themselves or to each other, such as biting, kicking, goring or smothering, nor for loss or damage arising from the condition of the animals themselves, or which results from their nature or propensities, which risks are assumed by the shipper.   The shipper hereby releases and discharges the express company from all liability from delay, injuries to or loss of said animals and paraphernalia, from any cause whatever, unless such delay, injury or loss shall be caused by the negligence of the agents or employés of the express company, and the shipper agrees that in no event shall the liability of the express company exceed the following amounts."

The calf went safely from Ypsilanti to Detroit over the electric line, and was transferred to the Union station for shipment over the Pere Marquette Railroad to Barryton.   When the calf arrived at the Union station, one of the defendant's employés moved a hand truck to the express wagon backed to the platform, and, having mounted

the express wagon in front of the calf, placed his hand on the crate, intending to draw the crate and the calf off the express wagon to the hand truck, when the calf made a lunge towards him, and then, striving to turn about in the crate, broke the crate, and fell off the express wagon to the ground, and, regaining his feet, ran down Third street, and was wholly lost.

The calf was 10 months old, and weighed about 400 pounds. The crate was made after the pattern of one received by plaintiffs from Pennsylvania, and, when they delivered it to defendant, they considered it was a safe and secure crate, but, upon seeing it upon the dock, thought it was a little too large. They have shipped two other animals.

"I shipped one to Sturgis, Mich., and also one to a place beyond Lansing. The bull I shipped to Sturgis was five to six months old, and the one shipped to Lansing was just a little over a year old. I shipped them in crates by the United States Express Company."

One of defendant's witnesses testified:

"They drove up there with the wagon, and this crate on the wagon. The calf was not tied in the crate, and the crate was a little large. The calf could turn around and get a pry on the crate, not clear around, but partly around. He did turn partly around, and, as soon as pressure was made on the crate, it went to pieces. * * * The driver attempted to get up on the wheel to push him off, and he tried to turn around to get the driver, and burst the crate.

"Q. Can you state what the condition of this bull was at this time, as to excitability or viciousness?

"A. He was in a very high state of excitement, very vicious."

Another testified:

"Q. State how the bull appeared to you?

"A. He acted vicious when he came there, when I got onto the truck he made for me.

"Q. In a mild or savage manner?

"A. In a savage manner. * * *

"*Q.* You think he turned around and broke the crate?
"*A.* Yes, sir.
"*Q.* So that crate was too large, was it?
" *A.* A little bit."

Defendant's witness H. D. Schantz testified:

" I live in Detroit. I am master of transportation of the United States Express Company, and I have been in that position for a year and a half. It is the custom of the defendant when it transports animals to have the shipper crate them. It is our custom and practice not to tie animals in the crate for the reason that the animal is liable to choke itself. * * * We are not in the habit of accepting animals not crated. I would have refused to accept the animal if it had not been crated. If the crate was not properly put up, I would have refused to accept it. If the crate was a good substantial crate, we would have paid no attention to the size of it."

Plaintiffs gave testimony tending to show that this bull calf was quiet and gentle on the farm, and that a bull did not become ugly until two years of age.

At the close of the testimony, counsel for defendant made the following motion:

"I ask the court to direct a verdict for the defendant for the following reasons:

" (1) The defendant was not an insurer of the animal that was shipped from Ypsilanti to Detroit, and is only liable to ordinary care and diligence.

" (2) There is no evidence in the case that goes to prove that the defendant is guilty of any negligence whatever.

"It appears by the uncontradicted evidence in the case that the bull became excited and broke from the crate and ran away. This act on the part of the animal was an inherent vice and proper to his nature and the defendant is not liable therefor."

The motion was denied and exception taken. The case was submitted to the jury and a verdict returned for plaintiffs.

Defendant relies for a reversal upon the first, second, and seventh assignments of error.

"*First.* The court erred in allowing the witnesses

Oliver L. Deake and Mrs. Clayton Deake to testify as to the disposition of the bull calf while on the farm of the plaintiffs."

It is argued that the character and conduct of the bull upon the farm had no bearing upon whether he became ugly and vicious when he arrived at Detroit. We think the testimony was material upon the question whether the conduct of the bull at Detroit was due to an innate vicious tendency, or to the natural inclination of a confined animal to escape, particularly when being handled by strangers in a wholly unaccustomed manner.

*Second.* The court erred in refusing to grant the motion made by the defendant.

The court substantially instructed the jury that defendant was not liable as an insurer, but was only required to use ordinary care and diligence. The court further instructed the jury as follows:

" The express company is not an insurer against loss and injury resulting from the inherent nature, viciousness, or habits of the animals themselves. In the transportation of live stock, the rule of liability is varied somewhat, yet the defendant is always bound to take notice of and recognize the known habits, propensities, and disposition of the animals, and that they will constantly endeavor to escape and they may escape, and the carrier is bound to take measures and use all reasonable effort to prevent injury or escape; and, if the injury or escape of any such animal could have been prevented by ordinary care, then the defendant would be liable. Where it is contended that the loss, injury, or escape was the result of the vice of the animal so being transported, then it must be made to appear that such vice of the animal was the sole proximate cause of such loss or injury. Now, gentlemen, there has been some evidence that there was a shipping contract made between the parties here at the time of the shipment. I don't think that is of any particular importance in this case, and I say to you, if no contract of this kind had been made between the parties, nevertheless the defendant would not be liable if the bull broke the crate by reason of his inherent vice and propensity."

If there was any negligence upon the part of the defendant, it consisted in accepting the calf improperly crated or in failing to properly tie the calf in the crate. As to the crate, counsel for plaintiffs say:

"No one contended that the defendant had furnished or was obligated to furnish the shipping crate in question, only this and nothing more. The defendant, if it found the crate on inspection to be insufficient, was bound to reject the shipment or abide the resulting consequences."

Plaintiff Clayton Deake testified:

"When the bull got to Ypsilanti, after being transported from my farm, he got a little nervous. He seemed to be all right while I was transporting him, and his condition when I left him at Ypsilanti was all right, for he had quieted down. I helped put him on the car. One of the express company's men assisted me. All the railroad men were there. He was a little nervous when he got to Ypsilanti. He tried to get out of the crate, and tried to turn around.

"Mr. Norris: The crate seemed to be strong enough to hold him?

"A. It did hold him.

"Q. He did nothing at Ypsilanti which would indicate that your crate was not sufficient to carry him through to Detroit?

"A. No, sir. I believe one of the express company's men was there when I put the calf in the car. The agent did not tell me to put him in the car, but that was according to the contract. I helped load him, but the consignee was to help unload him. What I saw there did not excite in my mind the necessity for taking any further precautions about the crate in any way. One of the defendant's men knew about whatever was exhibited there."

There was no defect in this crate other than its size, and, when the calf "tried to get out of the crate and tried to turn around" it held him, and plaintiff Clayton Deake did not think there was any necessity "for taking any further precautions about the crate in any way." Instead of supporting a finding of negligence in accepting the crate, the plaintiffs' testimony tends to disprove such negligence. The defendant had carried a calf to Sturgis and

one to Portland for plaintiffs, in similar crates constructed by plaintiffs, without injury to the animals. It carried the calf in question safely to Detroit, and failure to tie the bull after arrival at Detroit, where it was noticed it was restless and excited, and practically at the same time broke away, is not, in our opinion, an act of negligence on the part of the defendant. The circuit judge should have granted defendant's motion to direct a verdict on the ground that there was no evidence in the case to prove that the defendant was guilty of any negligence whatever. It is unnecessary, in view of the foregoing, to consider the other assignments of error.

Judgment should be reversed, and no new trial granted.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.